UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

DEBORAH LEIGH KELLEY,

    Plaintiff,

v.                                                                                        Civ. No. 16-618 GJF

NANCY A. BERRYHILL, *Acting
Commissioner of the Social Security
Administration*,

    Defendant.

## ORDER

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand for a Rehearing With Supporting Memorandum" ("Motion"), filed on January 12, 2017. ECF No. 15. The Commissioner responded on April 3, 2017. ECF No. 19. Plaintiff replied on April 24, 2017. ECF No. 20. Having meticulously reviewed the briefing and the entire record, the Court finds that Plaintiff's Motion is well taken and that the Administrative Law Judge's ("ALJ's") ruling should be **REVERSED** and **REMANDED**. Therefore, and for the further reasons articulated below, the Court will **GRANT** Plaintiff's Motion.

### I.    BACKGROUND

Plaintiff was born on September 30, 1969, in San Leandro, California. Administrative R. ("AR") 495. She received high marks in high school, but dropped out her senior year. AR 495. Plaintiff later earned her general equivalency diploma ("GED") and went on to serve six years in the Air National Guard. AR 495. Plaintiff also accrued a significant body of past relevant work, including positions as a technical writer, editor of technical publications, systems analyst, environmental compliance manager, training specialist, and residential aide. AR 32.

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on June 26, 2014. AR 76. Plaintiff claimed disability beginning on May 6, 2013, based on bipolar disorder, major depression, severe anxiety, post-traumatic stress disorder ("PTSD"), subluxation of the neck and brain, chronic pain, insomnia, chronic fatigue, cholesterol, and allergies. AR 78, 207. Plaintiff had previously filed a DIB claim in 2013 that was denied. AR 78. The Social Security Administration ("SSA") denied Plaintiff's 2014 application initially on January 2, 2015 [AR 95], and upon reconsideration on April 15, 2015. AR 113. At her request, Plaintiff received a *de novo* hearing before ALJ Lillian Richter on December 9, 2015, at which Plaintiff, her attorney, and a vocational expert ("VE") appeared. AR 41-75. On January 13, 2016, the ALJ issued her decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). AR 21-33. Plaintiff appealed to the SSA Appeals Council, but it declined review on April 18, 2016. AR 1-3. As a consequence, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 422.210(a) (2017).

Plaintiff timely filed her appeal with this Court on June 21, 2016. ECF No. 1.

## II. PLAINTIFF'S CLAIMS

Plaintiff advances four grounds for relief. First, she argues that the ALJ committed legal error in her analysis of the opinion of Plaintiff's treating psychologist, Dr. Louis Wynne, Ph.D. Pl.'s Mot. 13-16, ECF No. 15. Next, she contends that remand is warranted under Sentence Six of 42 U.S.C. § 405(g) (2012) for consideration of new and material evidence. *Id.* at 16-19. Lastly, Plaintiff's third and fourth claims allege that the ALJ failed to resolve conflicts between the Dictionary of Occupational Titles ("DOT") and the VE's testimony regarding sit/stand options and reaching limitations. *Id.* at 19-24.

## III. APPLICABLE LAW

### A. Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[1] The Court's review of that final agency decision is both factual and legal. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.").

Factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court examines "whether the ALJ

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981 (2017); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B. Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2017). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App. 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to determine if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). [Plaintiff] bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137,

146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to her past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV. THE ALJ'S DECISION

The ALJ issued her decision on January 13, 2016. AR 18. At step one, she found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of May 6, 2013. AR 23. At step two, the ALJ found Plaintiff to suffer from numerous severe impairments, including: (1) dysthymic disorder; (2) alcohol use disorder, in remission; (3) degenerative changes in the cervical spine; (4) bipolar disorder; (5) cervical spondylosis with disc osteophyte complexes at C5-C6 and C6-C7; (6) cervical facet syndrome; (7) enthesopathy of right hip region; (8) degenerative joint disease of the thoracic spine; (9) degenerative joint disease of the lumbar spine L4-L5 and L5-Sl; (10) osteoarthritis of the hips and sacroiliac ("SI") joint; and (11) PTSD. AR 23.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 24-26. This finding included an analysis of Plaintiff's mental impairments, which the ALJ found did not meet or medically equal the criteria of Listing Sections 12.04 (affective disorders) or 12.06 (anxiety-related disorders). AR 24-26.

The ALJ found that the paragraph B criteria of Listings 12.04 and 12.06[2] were not met "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." AR 25. She then explained her reasoning regarding paragraph B's four subparts, beginning with activities of daily living. There, the ALJ found Plaintiff to have a moderate restriction. The ALJ first looked to Plaintiff's own function statement, noting that despite her mental impairments, "she lives alone and is able to maintain her own household" and that "she has two small dogs she cares for; she watches television; she can prepare a simple meal; she can go to the gym; she is very organized and likes to have things in order; she does her laundry; and performs all her own household chores." AR 24. In addition, the ALJ cited Plaintiff's testimony that she "goes to the gym five times a week and works out about an hour each time." AR 34. Taken together, Plaintiff's reports led the ALJ to opine that Plaintiff "[c]learly" has "no more than a moderate degree of limitation on her activities of daily living." AR 24.

As to social functioning, the ALJ found Plaintiff to suffer moderate difficulties. The ALJ noted that the evidence showed Plaintiff could "interact appropriately and effectively with other individuals on a sustained basis," but that Plaintiff was nonetheless "a recovering alcoholic." AR 25. Similarly, the ALJ detailed the various methods by which Plaintiff assists others through Alcoholics Anonymous, but also considered Plaintiff's continuing difficulty with securing

---

[2] Paragraph B of Listings 12.04 and 12.06 (which was identical at the time in both) describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations must be the result of the mental disorder described in the diagnostic description. To meet either of these two Listings, a claimant must exhibit at least two of the following:
      1. Marked restriction of activities of daily living; or
      2. Marked difficulties in maintaining social functioning; or
      3. Marked difficulties in maintaining concentration, persistence, or pace; or
      4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, §§ 12.04(B), 12.06(B) (2014). On March 27, 2017, the SSA significantly altered the language of these listings.

employment and with venturing out in public, even when she had traveled to another state to visit a friend. AR 25.

Next, the ALJ turned to Plaintiff's ability to maintain concentration, persistence, and pace, and again found Plaintiff to have moderate difficulties. The ALJ observed that "[t]he evidence shows [Plaintiff] has some problems with detailed or complex tasks," but nonetheless "is able to sustain concentration and attention long enough to perform simple, routine tasks in a timely and efficient manner." AR 25. She likewise recounted that while Plaintiff "reportedly has problems with her memory," she is still "able to manage her appointments, medications, and other social events without any help." AR 25.

The ALJ concluded her paragraph B discussion by finding that Plaintiff "has experienced no episodes of decompensation, which have been of extended duration." AR 18. This same finding also supported the ALJ's conclusion that Plaintiff had failed to establish the 'paragraph C' criteria."[3] AR 26. To that point, the ALJ further explained that Plaintiff "does not have a residual disease process with very marginal adjustment and she is able to function outside a highly supportive living arrangement." AR 26.

Because none of Plaintiff's impairments satisfied an applicable Listing, the ALJ moved on to step four and assessed Plaintiff's RFC. AR 26-32. "After careful consideration of the entire record," the ALJ determined that Plaintiff has the residual functional capacity to perform a range of light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

---

[3] Paragraph C of Listings 12.04 and 12.06 (which was also identical at the time of the ALJ's decision in both) describes mental disorders that are serious and persistent. To qualify under this paragraph in either Listing, a claimant must have a medically documented history of the existence of the disorder over a period of at least two years, and evidence of both:
   1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
   2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life

*Id.* §§ 12.04(C), 12.06(C).

> Plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently. [Plaintiff] can stand and/or walk for six hours out of an eight-hour workday with normal breaks. [Plaintiff] can sit for six hours out of an eight-hour workday with normal breaks. [Plaintiff] can push and/or pull twenty pounds occasionally and ten pounds frequently. [Plaintiff] should alternate between sitting and standing once every hour for ten minutes. [Plaintiff] can occasionally reach overhead. [Plaintiff] can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. [Plaintiff] can frequently balance. She can occasionally stoop, kneel, crouch, and crawl. She is limited to hearing and understanding simple oral instructions. She is limited to simple routine tasks. She could not perform at an assembly-line production pace but could meet end of day goals. [Plaintiff] can have occasional contact with supervisors and co-workers. She can have incidental contact with the public. She is limited to making simple work related decisions in a workplace with few changes in the routine work setting. [Plaintiff] should not be exposed to unprotected heights, moving mechanical parts, or vibration, and should not operate a motor vehicle.

AR 26.

### A. Adverse Credibility Finding

To develop Plaintiff's RFC, the ALJ relied on two principal grounds. First, the ALJ "considered the factors . . . applicable to the credibility of [Plaintiff]," and rendered an adverse credibility finding. AR 31. In finding her allegations "less than fully credible," the ALJ first recounted that Plaintiff "stopped working due to a layoff, not because of physical or mental health conditions." AR 31. Although she found it "highly commendable" that Plaintiff "maintained her sobriety for seven years," the ALJ found it more remarkable that Plaintiff is able "to force herself to get up and out of bed and goes to the gym for exercise and socialization at the recommendation of her treating providers." AR 31. The ALJ reasoned that "[t]his validates her commitment to improving her mental and physical well-being so that she can get back into the workforce." AR 31. In sum, the ALJ concluded "[t]here is no evidence showing that [Plaintiff] would not be able to improve her condition with time and adherence to her treatment recommendations." AR 31.

8

B.  **Opinion Evidence**

Along with Plaintiff's adverse credibility finding, the ALJ relied on at least six medical opinions and one lay witness statement (aside from Plaintiff's) to determine Plaintiff's RFC. The ALJ's analysis of the relevant medical opinions, in descending order of significance, follows below.

*Louis Wynne, Ph.D. – Treating Clinical Psychologist*

On December 3, 2015, clinical psychologist Louis Wynne, Ph.D., completed a "Medical Source Statement" evaluating Plaintiff's mental limitations based upon at least thirty-four (34) psychotherapy sessions. Pl.'s Mot. 7, AR 708-13. Dr. Wynne described Plaintiff's course of therapy as "intensive," but notwithstanding the fact she did her "assigned homework," he found Plaintiff's progress to be "minimal." AR 709. He further opined that while Plaintiff "appears cognitively intact," her "severe depression [and] pervasive sense of worthlessness interfere[ ] with ordinary work demands." AR 709, 711. Ultimately, Dr. Wynne assessed Plaintiff's "mental abilities and aptitudes needed to do unskilled work" as being "seriously limited, but not precluded" in the following two categories: (1) completing a normal workday and workweek without interruptions from psychologically based symptoms; and (2) performing at a consistent pace without an unreasonable number and length of rest periods. AR 711-12. He similarly assessed Plaintiff as being "seriously limited, but not precluded" in her ability to perform the following three aspects of semiskilled work: (1) understanding and remembering detailed instructions; (2) carrying out detailed instructions; and (3) dealing with the stress of semiskilled and skilled work. AR 712. These assessments, in the aggregate, led to Dr. Wynne to conclude that Plaintiff's impairments would cause her to be absent from work more than four days per month. AR 713.

The ALJ accorded "limited weight" to Dr. Wynne's opinion. AR 30. The ALJ noted that Plaintiff had been a patient of Dr. Wynne's from January 21, 2015, through August 19, 2015, but focused her analysis on Dr. Wynne's note of July 1, 2015, which memorialized that Plaintiff "indicated her case manager recommended she quit her job." AR 30 (citing AR 623). The ALJ stressed that "Dr. Wynne discouraged this." AR 30. In fact, despite Dr. Wynne's finding that Plaintiff "has some serious symptoms and limitations with respect to concentration, persistence, and pace," the ALJ felt compelled "to emphasize [that Dr. Wynne] discouraged her from quitting" her job. AR 30. This perceived discrepancy led the ALJ to discount Dr. Wynne's evaluation, as she found it to be inconsistent with his own treatment records. AR 30.

*Thomas P. Dhanens, Ph.D. – Examining Consultative Psychologist*

Consultative psychologist Thomas P. Dhanens, Ph.D., examined Plaintiff on November 18, 2014, at the request of New Mexico Disability Determination Services. AR 394-98. Dr. Dhanens observed that Plaintiff "presented a normal appearance," but her "[a]ffect was variable." AR 396. At times, Plaintiff presented as "flat [and] blunted," while at "[o]ther times she was labile." AR 396. He opined that Plaintiff "appears to have significant characerological and mood disorder." AR 397. Nonetheless, because Plaintiff reported that she was more stable and less symptomatic on medication, Dr. Dhanens explained that "this would seem to suggest she should be more – rather than less – able to cope with employment." AR 397.

The ALJ assigned "limited weight" to Dr. Dhanens's report, as she felt it communicated only observations, rather than limitations. AR 29.

*S. Laura Lundy, Ph.D. – Examining Consultative Psychologist*

Plaintiff underwent a second psychological evaluation on June 16, 2015, at the University of New Mexico Health Sciences Center. AR 598. On that occasion, Dr. Lundy administered a

10

battery of psychological tests and diagnosed Plaintiff with four conditions: (1) major depressive disorder; (2) persistent depressive disorder; (3) personality disorder with mixed personality features; and (4) alcohol use disorder, in remission. AR 605. Dr. Lundy observed that Plaintiff "appears to be experiencing - and has been experiencing for most of her life - significant emotional distress which has a negative effect on her ability to function cognitively to her potential." AR 605. She explained that Plaintiff "likely developed maladaptive coping and interpersonal skills during her traumatic childhood and adolescence, which further prevent her from engaging in enjoyable and beneficial activities and relationships currently." AR 605. Although Dr. Lundy concluded that Plaintiff "cannot be considered disabled by reason of cognitive deficit," she nevertheless opined that Plaintiff suffered from "severe psychiatric disorders which are negatively impacting her ability to perform expected occupational and social duties." AR 606. In fact, Dr. Lundy "encouraged [Plaintiff] to work with her attorney to re-apply for Social Security Disability benefits," and "strongly recommended" to reviewing authorities "that her application be seriously considered." AR 606.

The ALJ gave "some weight" to Dr. Lundy's opinion, and advanced several bases for doing so. AR 30. First, the ALJ stressed that Dr. Lundy believed Plaintiff "could return to work once her psychiatric functioning is improved." AR 30. Additionally, the ALJ explained that she could not "ignore the fact that Dr. Lundy believed [Plaintiff] may have exaggerated her symptoms." AR 30. Lastly, the ALJ reduced the weight she accorded the opinion as it "[did] not give a good detailed functional assessment." AR 30.

*Sylvia M. Ramos, M.D. – Examining Consultative Physician*

On December 16, 2014, Sylvia Ramos, M.D., performed a consultative physical examination of Plaintiff. AR 426-29. Dr. Ramos probed each of Plaintiff's major body systems,

and concluded that "[s]he has complaints of joint pains of unclear etiology, but most likely degenerative disease." AR 429. Additionally, she recommended numerous laboratory and radiological examinations. AR 429. Based on what she observed, Dr. Ramos opined that Plaintiff could "sit, stand, walk, lift, carry, handle small objects, hear, speak[,] and travel except as limited by pain." AR 429.

The ALJ ascribed "some weight" to Dr. Ramos's evaluation, as she found the examination to be "consistent with other objective evidence." AR 28. She also explained that no further weight could be given to the opinion, as Dr. Ramos "merely indicate[d]" what activities Plaintiff could perform, rather than quantifying limitations. AR 28.

*Kevin Santulli, Ph.D., and M. Bongiovani, Ph.D., Non-Examining Consultative Psychologists*

Lastly, the ALJ evaluated the opinions of the non-examining consultative psychologists who reviewed Plaintiff's records at the initial and reconsideration stages. State agency psychologist Kevin Santulli, Ph.D., reviewed Plaintiff's medical records at the initial stage and opined that she would have moderate limitations in concentration, persistence, or pace but was capable of work where: (1) interpersonal contact was routine but superficial; (2) the complexity of tasks was learned by experience, there were only several variables, and she was only called to exercise judgment within limits; and (3) the supervision required was minimal for routine tasks but detailed for non-routine tasks. AR 92. Dr. Santulli classified this as semi-skilled work. AR 92. At reconsideration, M. Bongiovani, Ph.D., concurred in Dr. Santulli's assessment. AR 109-11. The ALJ considered these opinions, but accorded them "little weight," as she found that the opinions were "not consistent with the mental health treatment records," and neither Dr. Santulli nor Dr. Bongiovani had the opportunity to examine Plaintiff. AR 31.

The ALJ concluded, based on Plaintiff's adverse credibility finding and these medical opinions, that Plaintiff's "residual functional capacity assessment is supported by the evidence as a whole when viewed in its entirety." AR 31. Therefore, the ALJ proceeded to the second phase of step four and found that Plaintiff had past relevant work as a technical writer, an editor of technical publications, a systems analyst, an environmental compliance manager, a training specialist, and a residential aide. AR 32. In the third phase of step four, the VE testified that an individual with Plaintiff's RFC would be incapable of performing any of Plaintiff's past relevant work. As a consequence, the ALJ proceeded to step five.

At step five, the ALJ relied on the testimony of the VE to determine what jobs, if any, Plaintiff could still perform. The VE testified that an individual with Plaintiff's RFC could perform the jobs of shipping and receiving weigher, DOT #222.387-074, routing clerk, DOT #222.687-022, and marker, DOT #209.587-034. AR 33. Based on that testimony, the ALJ concluded that "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 33. Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period and denied her claim. AR 33.

V.  **ANALYSIS**

Plaintiff's Motion advances four allegations of error, but the Court need only address the first. There, Plaintiff advances a meritorious challenge, in that the ALJ's analysis of Dr. Wynne's opinion is simultaneously fraught with legal error and unsupported by substantial evidence. As a result, this Court must remand and reverse the ALJ's decision for both proper analysis and support.

### A. The Parties' Positions

Plaintiff initiates her challenge by explaining that Dr. Wynne, her treating psychologist, assessed her mental impairments as being so severe that she would likely miss four or more days of work per month. *See* Pl.'s Mot. 14-15. She emphasizes that the VE testified that such poor attendance would preclude her from competitive employment. *Id.* at 15. She then turns to the ALJ's stated rationale for discounting Dr. Wynne's opinion, which in relevant part, read as follows:

> Dr. Wynne completed a medical source statement on December 3, 2015, in which he noted her cognitive functioning is intact. He indicates she has some serious symptoms and limitations with respect to concentration, persistence, and pace. Despite this assessment of serious symptoms, I have to emphasize he discouraged her from quitting her job. Overall, his assessment is not consistent with his own treatment records. Thus, I give limited weight.

AR 30. Plaintiff takes exception with the ALJ's finding "that [Dr. Wynne's] December 3, 2015[,] assessment is not consistent with [his] own treatment records," and argues that the ALJ "fails to explain sufficiently where the inconsistency exists." Pl.'s Mot. 14. Put another way, she contends the ALJ "erred by failing to provide specific, legitimate reasons for rejecting" Dr. Wynne's opinion despite Plaintiff's thirty-four (34) visits to his office. *Id.* at 15.

Plaintiff also argues that the ALJ has mischaracterized Dr. Wynne's treatment notes. She refers to the notes themselves, which reflect that "after [Plaintiff] took a battery of neuropsychological tests administered by another psychologist," the other psychologist[4] suggested Plaintiff quit her job. *Id.* at 15 (citing AR 623). Plaintiff further quotes Dr. Wynne's treatment note, which chronicles that the other provider "suggested [Plaintiff] quit her job. I continued with my view that she was depressed and that was the fundamental issue that she must

---
[4] The other psychologist Dr. Wynne is referring to is almost certainly Dr. Lundy, who examined Plaintiff on June 16, 2015. AR 598-606. Dr. Lundy's consultation would have been a mere two weeks prior to the note in questions, which Dr. Wynne penned on July 1, 2015. AR 623.

14

address. <u>Quitting her job might not help with that</u>." *Id.* (quoting AR 623) (emphasis in original). Plaintiff contends that the ALJ failed to "sufficiently explain how a comment that [Plaintiff's] depression might not be affected by her employment status is equivalent to actively discouraging [Plaintiff] from quitting employment or how it's inconsistent with other treatment notes or with [Dr. Wynne's] estimate of her four absences a month." *Id.* at 15-16.

The Commissioner responds that the ALJ properly "considered Dr. Wynne's opinion that Plaintiff had serious limitations in five areas of mental work-related and would miss more than four days of work per month." Def.'s Resp. 10. She challenges Plaintiff's position, and argues in the obverse that the ALJ found Dr. Wynne's "opinion was inconsistent with the record - including Dr. Wynne's own treatment notes - and reasonably gave it limited weight." *Id.* The Commissioner argues that, by discouraging Plaintiff from quitting her job, "Dr. Wynne did not believe that [Plaintiff] was incapable of all work, much less the limited range of work assessed by the ALJ." *Id.* "While Plaintiff may disagree with the reasons given by the ALJ for giving Dr. Wynne's limited weight and his [sic] decision to do so," the Commissioner nonetheless maintains that "the ALJ's reasons were sufficiently articulated and supported by substantial evidence in the record." *Id.*

### B. The Treating Physician Rule

Under the treating physician rule, "the Commissioner will generally give greater weight to the opinions of sources of information who have treated the claimant than of those who have not." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (citing *Langley*, 373 F.3d at 1119). *See* 20 C.F.R. § 404.1527(d)(2) (2016) (defining how the SSA uses medical source opinions, including treating sources, but reserving the final decision on residual functional capacity to the Commissioner); 20 C.F.R. § 416.927(d)(2) (2016) (same). In analyzing whether

15

a treating source opinion is entitled to controlling weight, the ALJ must perform a two-step process. First, the ALJ considers whether the opinion: (1) is supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) is consistent with the other substantial evidence in the record. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2) and *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). "If the answer to both these questions is 'yes,' [the ALJ] must give the opinion controlling weight." *Id.* (citation omitted). If the opinion is deficient in either of these respects, however, it is not to be given controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

If the opinion is not entitled to controlling weight, "the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Pisciotta*, 500 F.3d at 1077. This inquiry is governed by its own set of factors, which include:

(1) the length of the treatment relationship and the frequency of examination;

(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

(3) the degree to which the physician's opinion is supported by relevant evidence;

(4) consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (quotation omitted). While an ALJ must consider these factors, she need not expressly discuss each of them in her opinion. *Oldham*, 509 F.3d at 1258; SSR 06-3p, 2006 WL 2329939, at *5 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case."). Rather, "the ALJ must make clear how much weight the opinion is being

given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330 (citing *Watkins,* 350 F.3d at 1300–01). Furthermore, the ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham*, 509 F.3d at 1258. If this is not done, a remand is required. *Watkins*, 350 F.3d at 1300.

### C. The ALJ's Treating Physician Analysis

In this case, the ALJ observed that Dr. Wynne treated Plaintiff for approximately eight months. AR 30. She noted that Dr. Wynne took notes regarding Plaintiff's sessions, but offered no commentary on their content beyond the singular finding highlighted below. AR 30; *see* AR 615-43 (Dr. Wynne's treatment records). She also briefly described Dr. Wynne's opinions about Plaintiff's functional limitations. AR 30. Most strikingly, the ALJ reduced the *entirety* of her findings on Dr. Wynne's opinion to the following passage:

> Overall, his assessment is not consistent with his own treatment records. Thus, I give limited weight.

*Id.* There is no other portion of the ALJ's decision that could be interpreted as findings on Dr. Wynne's opinions. *See* AR 21-33. These sixteen (16) words are the sum total.

#### 1. The ALJ's treating physician analysis is legally erroneous

Although neither party tailors their briefing toward this infirmity, the transparent legal error that infects the ALJ's opinion nonetheless mandates remand. In any evaluation of a treating physician opinion, regulations assign immutable responsibilities to the ALJ. First among these is the requirement that the ALJ make a finding as to whether the opinion: (1) is supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) is consistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2); *Pisciotta*, 500 F.3d

17

at 1077.  Here, the ALJ made neither finding, relying instead on the singular statement that Dr. Wynne's "assessment is not consistent with his own treatment records."  AR 30.  Although the Commissioner alleges that this statement represents a finding that Dr. Wynne's opinion "was inconsistent with the record," this Court is unpersuaded.

Plaintiff accurately contends that the ALJ "erred by failing to provide specific, legitimate reasons for rejecting" Dr. Wynne's opinion, but general imprecision is not the opinion's failing. *See* Pl.'s Mot. 14.  The true error here is the ALJ's failure to follow the treating physician rule to explain why Dr. Wynne's opinion did not merit controlling weight.  The further error is the ALJ's failure to apply the *Watkins* factors to determine, in the absence of controlling weight, how much weight the opinion deserved.

Even if the Court were persuaded by the Commissioner's arguments, there is still no explanation for how the ALJ's sixteen-word finding in this case could account for the required, distinct step-one and step-two determinations.  *See Krauser*, 638 F.3d at 1330 (reiterating that "[o]ur case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling . . . all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct[,]" and thus, reversing and remanding where "the ALJ simply stopped after the first step[.]"); *Watkins*, 350 F.3d at 1300–01 (holding that the treating physician analysis "is sequential," and reversing and remanding where the ALJ failed to complete both steps, and where therefore, meaningful review was not possible); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *4 (July 2, 1996) (explaining the two distinct steps of the treating physician analysis).  There is similarly no persuasive argument to be made that the ALJ gave good reasons, tied to the factors specified in the regulations, for the limited weight she assigned.  *See Krauser*,

18

638 F.3d at 1330. To the contrary, the ALJ here committed legal error by failing to apply the mandatory two-step analysis in evaluating Dr. Wynne's opinion.

### 2. The ALJ's lone reason for discounting Dr. Wynne's opinion is not supported by substantial evidence

The ALJ's finding that Dr. Wynne's opinion was inconsistent with his own treatment records also lacks support from substantial evidence. *See* AR 30. The Commissioner correctly relates that "the ALJ pointed out that Dr. Wynne's own treatment notes indicated that he discouraged Plaintiff from quitting her job." Def.'s Resp. 10. Yet, the Commissioner errs by inferring from that notation that Dr. Wynne "indicat[ed] that [he] did not believe [Plaintiff] was incapable of all work, much less the limited range of work assessed by the ALJ." *Id.* Indeed, the inference itself reveals the inadequacy of the ALJ's finding, in that it necessarily *must* be reinforced by supposition.

A close reading of Dr. Wynne's notation demonstrates that he was concerned about Plaintiff's depression, and that he considered it to be the "fundamental issue that she must address." AR 623. He expressed concern that Plaintiff resigning her employment at that time might not assist in addressing that issue. AR 623. He said nothing more on the subject, and yet that statement formed the lone basis the ALJ's discounting his opinion, as she felt the notation contradicted the various workplace restrictions later recommended by Dr. Wynne. On its face, this notation did not create the inconsistency discerned by both the ALJ and the Commissioner. This is not to say that with a proper treating physician analysis, supported by good reasons tied to the regulations, the ALJ could not have explained exactly how she made the inferential leap from that notation to the inconsistency she alleged. But such is not the case here. The ALJ made no such effort to comply with the treating physician rule, and the mere scintilla of evidence embodied by this perceived inconsistency falls well short of the substantial evidence required by

law to affirm the ALJ's decision. As a consequence, the Court must reverse and remand the ALJ's decision for a legally proper and adequately supported evaluation.

## VI. CONCLUSION

For the reasons articulated above, the Court cannot find that the ALJ's analysis of Dr. Wynne's opinion was supported by substantial evidence or that the ALJ correctly applied the proper legal standards. Because proper consideration of Dr. Wynne's opinion may render moot the other errors alleged by Plaintiff, the Court need not address them at this time.

**IT IS THEREFORE ORDERED** that Plaintiff's "Motion to Reverse and Remand for a Rehearing With Supporting Memorandum" [ECF No. 15] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **REVERSED** and that the instant cause is **REMANDED** for further review consistent with this opinion**.**

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*